IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

**FILED**

FEB 27 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

UNITED COMPANIES LENDING )
CORPORATION and UNITED )
COMPANIES LIFE INSURANCE )
COMPANY, )
 )
    Plaintiffs )
 )
v. )  CV NO. 96-HM-1199-NW
 )
JAMES D. STEPHENSON and )
JUEIL STEPHENSON, )
 )
    Defendants )

**ENTERED**

FEB 27 1997

## MEMORANDUM OPINION

The above-entitled civil action is currently before this Court on the Court's *sua sponte* jurisdictional review. This declaratory judgment action was filed directly in this Court on May 7, 1996 pursuant to 28 U.S.C. § 2201 with this Court's jurisdiction predicated upon 28 U.S.C. § 1331 [federal question] and § 1332(a) [diversity of citizenship and amount in controversy]. For the reasons stated hereinbelow, this Court finds that it lacks subject matter jurisdiction over this civil action and must dismiss this case for want of jurisdiction.

### FACTUAL BACKGROUND

On May 7, 1996 Plaintiffs United Companies Lending Corporation [hereinafter "United Lending"] and United Companies Life Insurance Company [hereinafter "United Life"] jointly filed in this Court their Complaint for Declaratory Judgment against individual Defendants James D. and Jueil Stephenson. Plaintiffs allege that they are both corporations created pursuant to and existing under

the laws of the state of Louisiana and that each has its principal place of business in Baton Rouge, Louisiana. Complaint at ¶ 1. Plaintiffs further allege that both individual Defendants James D. and Jueil Stephenson are citizens of the State of Alabama. Complaint at ¶ 2. It is alleged by Plaintiffs that this Court has (1) federal question jurisdiction within the meaning of 28 U.S.C. § 1331 in that this action arises and seeks a declaration of rights under the Depository Institutions Deregulation Monetary Control Act [hereinafter "DIDMCA"], 12 U.S.C. § 1735 et seq., and (2) diversity jurisdiction within the meaning of 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship among the party litigants and that the amount in controversy exceeds the sum of $50,000 exclusive of interest and costs. Complaint at ¶ 3, 4.

The events leading up to the filing of this civil action are relatively straightforward. Plaintiffs allege that on or about May 23, 1991 individual Defendants James D. and Jueil Stephenson executed a promissory note and mortgage secured by residential real estate in favor of Plaintiff United Lending in the amount of $24,400. On that same date, it is alleged by Plaintiffs that Defendant James D. Stephenson purchased a credit disability insurance policy from corporate Plaintiff United Life. Complaint at ¶ 5, 6. On or about August 8, 1994[1] Defendant James D. Stephenson filed a claim

---

[1] Paragraph 7 of the Plaintiffs' Complaint actually indicates that this claim was made on August 8, 1992. However, from the remaining allegations it appears that this must have been a typographical error, else there would be no dispute. This Court will assume that the Complaint should have shown this claim to have been filed on August 8, 1994, not 1992.

2

for benefits under the aforementioned credit disability policy with Plaintiff United Life. Plaintiffs allege in their Complaint that Defendant James Stephenson's benefits as set out in the policy were provided only through May 23, 1994 and that Mr. Stephenson had been notified of the expiration of such benefits in writing by letter dated June 17, 1994. Complaint at ¶ 7. At some time thereafter (though Plaintiffs' Complaint does not specify when) Defendants ceased payments on their mortgage note to United Lending. Complaint at ¶ 8.

Plaintiffs allege that during the month of November 1994 Plaintiff United Lending was contacted by an attorney (whose identity was not disclosed to this Court) claiming to represent Defendants. This attorney allegedly informed United Lending that Defendants had been told (though the Complaint does not disclose by whom) at the time of their loan closing that the credit disability insurance would remain in force for the term of their loan. The attorney also allegedly accused United Lending of charging more than five [5] "points" in violation of the Alabama "Mini-Code," Ala. Code § 5-19-4(g), when Plaintiff United Lending made Defendants the loan in 1991. Plaintiffs further allege that even if this claimed overcharge were true, the amount overcharged would be only $727. It is further alleged that the attorney asserted to Plaintiff United Lending that Defendants were entitled to compensatory and punitive damages from Plaintiffs as a result of the alleged Mini-Code violation and misrepresentation. Complaint at ¶ 9.

Plaintiffs deny any wrongful conduct and any right on the

3

Defendants' part to damages from Plaintiffs. Complaint at ¶¶ 10-12. Plaintiffs also allege that they were exempt from the operation of the cited provision of the Mini-Code, Ala. Code § 5-19-4(g), by virtue of DIDMCA and the National Housing Act. Complaint at ¶¶ 13, 14. Plaintiffs in their Request for Relief urged this Court to enter a judgment declaring the rights of the various parties and that Defendants are not entitled to any damages form Plaintiffs.

## DISCUSSION

It must be noted at the outset of this analysis that it is well established that the Federal Declaratory Judgment Act does not provide an independent basis for federal court jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950). "Consequently, a party seeking declaratory relief must satisfy the same jurisdictional requirements prerequisite to the bringing of other suits." *Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 435 (11th Cir. 1989). To have jurisdiction over this present declaratory judgment action, this Court must "analyze the assumed coercive action by the declaratory judgment defendant." *Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1467 (11th Cir. 1987). In other words, this Court must briefly assume that there were no such device as a declaratory judgment action and instead assume that a coercive action (i.e. the one underlying the pending declaratory judgment action) had been brought by the declaratory judgment defendant. If this Court would have jurisdiction over such an underlying coercive action, the court has jurisdiction over this corresponding declaratory judgment action. *See Franchise Tax*

4

*Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 19-20 (1983); *Skelly Oil,* 339 U.S. at 671-72; *Gulf States Paper*, 811 F.2d at 1467; *Hudson County News Co. v. Metro Assocs., Inc.*, 141 F.R.D. 386, 389 (D. Mass. 1992). In light of this analytical framework, this Court will examine whether it has either federal question or diversity jurisdiction over the above-entitled civil action.

The coercive action which underlies this declaratory judgment civil action is an action for violation of Section 5-19-4(g) of the Code of Alabama, as well as fraud and misrepresentation.[2] These claims are all creations of the law of the State of Alabama. None of these claims in a well-pleaded complaint would indicate the existence of federal question jurisdiction. *See Franchise Tax Board*, 463 U.S. at 9. Plaintiffs do allege in their Complaint for Declaratory Judgment that they are not subject to the provisions of Section 5-19-4(g) of the Code of Alabama by virtue of DIDMCA and the National Housing Act. However, DIDMCA and the National Housing Act will be raised only as part of a defense to the Alabama state law claims made by the Stephensons in a coercive action and will not appear on the face of their well-pleaded complaint. It is well settled that a likely federal defense provides no basis for federal question jurisdiction; the face of a plaintiff's complaint is the deciding factor. *See id.* at 9-11. Here it is obvious that no federal question would appear on the face of any coercive action

---

[2] It is conceivable that such an action would also include claims of outrage, negligent training and supervision, and civil conspiracy, though the mention of such claims here is in no way a comment on the possibility of their success.

5

filed by the Stephensons. Accordingly, this Court finds, determines and holds that it lacks federal question jurisdiction over this civil action within the meaning of 28 U.S.C. § 1331.

Turning to the question of the existence of diversity jurisdiction, it is true that there is diversity of citizenship among the party litigants to *this* civil action since both individual Defendants are citizens of the state of Alabama and both corporate Plaintiffs are citizens of the state of Louisiana. However, as detailed hereinabove *this* civil action is not the measuring stick for jurisdictional purposes. It is the underlying coercive action. For two different and alternate reasons that follow, this Court finds that it would not have diversity jurisdiction over the coercive action underlying this declaratory judgment action.

First, this Court finds that the amount in controversy in an underlying coercive action does not exceed the sum or value of $50,000.00, exclusive of interest and costs. Plaintiffs here have alleged that (assuming Defendants' assertions are accurate) the actual amount Defendants were overcharged on this loan and real estate financing transaction was only $727. Complaint at ¶ 9. Even assuming that the individual Defendants in this civil action (who would be plaintiffs in the coercive action) claimed entitlement to compensatory and punitive damages from United Life and United Lending, such a claim in this Court's considered judgment would not be sufficient to establish the requisite amount in controversy.

6

The only allegation regarding the amount in controversy in Plaintiffs' Complaint is found in paragraph three thereof, which simply states, "This Court has jurisdiction under 28 U.S.C. § 1332 by virtue of the parties' diversity of citizenship and by virtue of the fact that the amount in controversy exceeds the sum of $50,000, exclusive if interest and costs." This quoted allegation contains the so called "*magic incantation*" used and relied upon by many lawyers in seeking to establish federal diversity jurisdiction, usually on removal from state court. The phrase "magic incantation" applied to the above-quoted language is an identifying phrase most often used tongue-in-cheek in memorandum opinions issued in civil cases predicated on diversity. This phrase is not original with this Senior United States District Judge who first observed its use in *Garza v. Bettcher Industries, Inc.*, 752 F. Supp. 753, 763 (E.D. Mich. 1990):

> In the instant case, the Defendant's initial removal petition merely stated, as if reciting some magical incantation "the amount in controversy exceeds $50,000," without identifying any specific factual allegations or provisions in the Complaint which might support that proposition, nor providing the Court with any independent underlying factual basis from which the Defendant actually drew this conclusion.

Unfortunately for many litigants seeking to establish diversity jurisdiction, this so-called "magic incantation" has no magic to it except in the mind of the lawyer attempting its use. It is in fact nothing more than a conclusory allegation bereft of fact. It proves nothing and most assuredly, **standing alone**, does not establish that the 28 U.S.C. § 1332(a) amount in controversy exceeds the sum or value of $50,000, exclusive of interest and

7

costs. This Court hastens to note that in some circumstances in obvious "high roller" cases in which the allegations cause the complaint to reek "big money" the allegations of the complaint, coupled with the use of the so-called "magic incantation" in the notice of removal, will be sufficient to satisfy the federal district court making the jurisdictional review that the amount in controversy in the removed case meets the 28 U.S.C. § 1332(a) jurisdictional requirement. But it is only when the District Court's own independent jurisdictional evaluation of the complaint reveals that the case has all the highlights and marks of a "high roller" case moneywise that a removing party or parties can squeak by and keep the case in federal court by and through the use and utilization of this proverbial "magic incantation." The instant case most assuredly does not, in the considered judgment of the Court, fit or belong to this described category.

In the present case counsel of record for corporate Plaintiffs endeavor to bolster their clients' use of the "magic incantation" in paragraph nine of the Complaint by pointing to the facts that the individual Defendants are already making demands of compensatory and punitive damages. However, Plaintiffs cite this Court to no cases and certainly to no facts underlying such cases which might establish that the amount in controversy in the Stephensons' underlying coercive action actually exceeds the sum or amount of $50,000.00, exclusive of interest and costs. Accordingly, this Court finds, holds and determines that the amount in controversy in this civil action within the meaning of 28 U.S.C. § 1332(a) does

8

not exceed $50,000.00, exclusive of interest and costs.

In examining the coercive action underlying this declaratory judgment action, this Court alternatively is of the opinion that there would be no diversity of citizenship in such an action. An underlying coercive action for fraud, misrepresentation and violations of the Alabama Mini-Code would almost certainly, either by being named in the original complaint, by joinder under Rule 18, 19 or 20 or by intervention under Rule 24 of the Federal or Alabama Rules of Civil Procedure, the agent who sold the Stephensons the policy would be named as a party litigant. In such cases, the agent is almost always a citizen of the same state as the purchaser of the policy. While this Court cannot with certainty say that this is the case here since no coercive action has yet been filed, such is certainly more likely than not likely. Other District Courts within the Eleventh Circuit have held that a declaratory judgment action Plaintiff cannot use the declaratory judgment remedy to accomplish a "backdoor" removal of a case to federal court that otherwise never would have been removable by virtue of a nondiverse defendant. *See Terra Nova Ins. Co., Ltd. v. Acer Latin America, Inc.*, 931 F. Supp. 852, 855 (S.D. Fla. 1996); *General Star Indemnity Co. v. Puckit, L.C.*, 818 F. Supp. 1526, 1533 (M.D. Fla. 1993); *Casualty Indemnity Exchange v. High Croft Enterprises, Inc.*, 714 F. Supp. 1190, 1193 (S.D. Fla. 1989). Accordingly, this Court alternatively finds, determines and holds that it lacks diversity subject matter jurisdiction over this civil action for want of diversity of citizenship among the party litigants within the

9

meaning of 28 U.S.C. § 1332(a).

What these Plaintiffs are seeking here is an **advisory opinion** from this federal district court in the guise of a declaratory judgment. All of that part of Plaintiffs' Complaint about an unidentified lawyer representing the individual defendants telephonically calling Plaintiff United Lending in November 1994 (2 years, 3 months ago) claiming "this and that" occurred at loan closing and asserting to United Lending that on loan closing with Defendants on or about May 23, 1991 (almost 6 years ago) United Lending charged more than 5 "points" to the defendants in purported violation of Section 5-19-4(g) of the Code of Alabama resulting in a prohibited overcharge of $727.00 is in actuality a **legal smoke screen bereft of facts fashioned by Plaintiffs in gross violation of Rule 8(a) of the Federal Rules of Civil Procedure.**

CONCLUSION

This Court lacks both diversity and federal question subject matter jurisdiction over the above-entitled declaratory judgment civil action within the meaning of 28 U.S.C. § 1331, 1332(a). Contemporaneously with the entry date of this Memorandum Opinion, this Court will enter an appropriate Order *sua sponte* dismissing this civil for lack of subject matter jurisdiction.

DONE this 27th day of February, 1997.

_____
E.B. HALTOM, JR.
SENIOR UNITED STATES DISTRICT JUDGE

10

## FLORENCE, ALABAMA ADDRESS:

U.S. District Court
Northern District of Alabama
U.S. Post Office & Courthouse
210 North Seminary Street
P.O. Box 1076
Florence, AL 35630
Telephone: (205) 760-8415

11